UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA HELTON,

                                  Civil Action No. 18-11440
        Plaintiff,        Honorable Denise Page Hood
                                  Magistrate Judge David R. Grand

v.

NANCY A. BERRHILL,
*Acting Commissioner of Social Security*,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11] AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]

Plaintiff Jessica Helton ("Helton") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). (Doc. #1). Both parties have filed summary judgment motions (Docs. #11, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Helton is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Helton's Motion for Summary Judgment (**Doc. #11**) be **DENIED,** and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Helton was born on May 1, 1979, and was 34 at the time of her alleged onset date of December 20, 2013. (Tr. 60). Helton applied for disability in the form of SSI benefits due to bipolar 1, PTSD from traumatic childhood, borderline personality disorder, ADD, carpal tunnel, and osteoarthritis in both knees. (Tr. 60-71, 121-123). Her application for SSI was initially denied on July 29, 2015. (72-75). She requested a hearing, which was held on June 7, 2017, before ALJ Regina Sobrino (the "ALJ"). (Tr. 27). Helton appeared and testified at the hearing, represented by attorney Andrea Hamm. (Tr. 29).

Helton testified that she was unable to work because "a lot of things make me feel pain or tired, especially my joints, like if I stand too long or sit too long." (Tr. 31). She testified to trouble lifting, bending her knees, and trouble going down stairs. Although Helton complains of carpal tunnel and hand/finger pain, she testified "[g]enerally, [] for work," she does not have difficulties using her hands. (Tr. 32). After completing tenth grade in school, Helton received her GED. (Tr. 30). Helton last worked in 2010, during which time she "volunteer[ed] for activities, took care of bird aviaries" at the Suncrest Medical Care Facility. (*Id.*, Tr. 190). In 2009, she reported being a temporary substitute teacher for Bright Beginnings Daycare, and working at a Quizno's. (*Id.*).

Helton has two sons, including a 12 year old son with high functioning autism, who lives with her. (Tr. 30, 33). In 2016, Helton and her son took the Greyhound bus to Tennessee, so her son could see his father. (Tr. 34-35). Helton drives, cooks, cleans, does laundry and chores as necessary, including shopping for groceries. (Tr. 33-34). She also goes to church "when [she] can drive myself out." (*Id.*). As for hobbies, she likes to play video games and crochet (although she

2

testified that she can only crochet for 20 minutes before her hands start hurting), and she sold some of her handmade crafts and crocheted items. (Tr. 38, 742).

Impartial Vocational Expert ("VE") Robb also testified at the hearing, answering a series of questions posed to her by the ALJ. (*Id.*). On October 30, 2017, the ALJ issued a written decision finding that Helton is not disabled under the Act. (Tr. 21). Helton appealed that decision to the Appeals Council, which denied her request for review on April 24, 2018. (Tr. 1-3). Helton then timely filed for judicial review of the final decision on May 8, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Helton's medical records, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing the rest of that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Framework for Disability Determinations

Under the Act, SSI benefits are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

3

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Helton is not disabled under the Act. At Step One, the ALJ found that Helton had not engaged in substantial gainful activity since May 13, 2015, the application date. (Tr. 13). At Step Two, the ALJ found that Helton had the following severe impairments: osteoarthritis, fibromyalgia, carpal tunnel syndrome, obesity, varicose veins, obstructive sleep apnea, anxiety disorder, affective disorder and borderline personality disorder. (Tr. 13). At Step Three, the ALJ found Helton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 13-14). The ALJ then assessed Helton's residual functional capacity ("RFC"), concluding that Helton had the RFC to:

> [P]erform light work as defined in 20 CFR 416.967(b), with the following

>additional limitations: the opportunity to alternate from sitting to standing, and from standing to sitting, for up to 5 minutes approximately every 20 minutes, provided the person is not off task more than 10% of the work period; frequent handling, fingering, feeling, and reaching; simple, routine, repetitive, unskilled tasks with a specific vocational preparation (SVP) of 1 or 2 as defined in the Dictionary of Occupational Titles, with no fast-paced production requirements (e.g., no assembly line work), minor workplace changes, and simple work-related decisions; no work that requires interaction with the public; no work in tandem with co-workers; and routine supervision.

(Tr. 15).

At Step Four, the ALJ found Helton was unable to perform any of her past relevant work. (Tr. 19-20). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Helton is capable of performing a significant number of jobs in the national economy, including packer (48,000 jobs) and inspector (40,000 jobs). (Tr. 20). As a result, the ALJ concluded that Helton is not disabled under the Act. (Tr.21).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Robbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, *supra* at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, *supra* at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

### D.     Analysis

In her motion for summary judgment, Helton argues that the ALJ erred: 1) under SSR 96-

6p, by not obtaining an updated opinion after new medical evidence was added to the record; 2) by relying on the opinions of non-examining physicians regarding the severity of her impairments in formulating the RFC; 3) by failing to comply with SSR 96-8p in assessing her mental and physical RFC "because the ALJ's mental and physical RFC is simply conclusory and does not contain any rationale reference to supporting evidence" (Doc. #11 at 15); and 4) by failing to include a function-by-function assessment, per SSR 96-6p.  The Court will address these arguments in turn.

> 1. *The ALJ's Decision Not to Obtain an Updated Medical Opinion Was Not Reversible Error*

Helton argues "the ALJ erred in not obtaining a medical advisor or updated consultative examinations as required in SSR 96-6p, particularly given the complicated medical issues involved" and the addition of new medical evidence in the record after two medical opinions were issued in 2015.  (Doc. #11 at 12).  Specifically, Helton argues the ALJ erred at Step Three in this respect, explaining, "According to SSR 96-6p, the ALJ should obtain an updated medical opinion from a medical expert where additional medical evidence is received that could modify the state agency's medical consultants finding that the impairments were not equal in severity to any impairment in the Listing of Impairments."  (*Id.* at 13).

There are several problems with Helton's argument.  Most significantly, Helton relies solely on SSR 96-6p for her argument, and as the Commissioner points out in response, SSR 96-6p was not in effect at the time the ALJ issued her decision.  As the Commissioner explains, SSR 17-2p, effective March 27, 2017 (seven months prior to the ALJ's decision in this case), "rescinds and replaces SSR 96-6p" in providing "guidance on how adjudicators [ ] make findings about medical equivalence."  SSR 17-2p, 2017 WL 3928306, at *1 (Mar. 27,. 2017).  Under SSR 17-2p, "[i]f an adjudicator believes that the evidence does not reasonably support a finding that the

7

individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.* at *4. SSR 17-2p further states, "If an adjudicator [ ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) does not medically equal a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* Here, the ALJ made such a finding. (Tr. 13). This alone is sufficient grounds to reject Helton's argument.

Moreover, although Helton suggests error at Step Three because of recent medical evidence added to the record, she does not identify any particular listing she believes she met. Nor does she argue that the ALJ inadequately considered any of the recent evidence when making her Step Three finding. At any rate, the ALJ's full decision reveals she did consider the recent evidence, through 2017, when making her decision. Here, the ALJ explained in detail, at Step Three, why the evidence did not meet or medically equal a listed impairment, far exceeding SSR 17-2p's requirements. For example, the ALJ named several of Helton's conditions, including her osteoarthritis, fibromyalgia, carpal tunnel syndrome, obesity, and her mental impairments, and mentioned that each, when considered singly and in combination, did not meet or medically equal a listing. (Tr. 13-14). Helton focuses her argument on her mental impairments (Doc. #11 at 12), yet the ALJ cited specific evidence to support her analysis regarding Helton's mental impairments, such as Helton providing personal care for herself and her son, her ability to maintain activities of daily living, and not needing special reminders to care for personal needs or taking medication.

(Tr. 14). Accordingly, the ALJ complied with the relevant requirements of SSR 17-2p, and Helton's argument fails. See *Jammer v. Comm'r of Soc. Sec.,* No. CV 18-10445, 2019 WL 1372171, at *7 (E.D. Mich. Feb. 22, 2019), *report and recommendation adopted,* No. CV 18-10445, 2019 WL 1354037 (E.D. Mich. Mar. 26, 2019) ("Defendant is correct that under SSR 17-2p, an ALJ may find that a claimant does not medically equal a listed impairment without the support of a medical opinion.").

Helton points to no other Step Three error by the ALJ, nor does the Court identify any such error. In fact, "a court can find the listing analysis sufficient by looking at the entire opinion," rather than limiting its review to any particular section of the ALJ's decision. *Johnson v. Comm'r of Soc. Sec.*, 2015 WL 730094, at *26 (E.D. Mich. Feb. 19, 2015). And here, as discussed below, it is clear that the ALJ adequately considered and analyzed the medical evidence, including the more recent evidence. (Tr. 15-20).

### 2. *The ALJ Did Not Err in Relying on Opinions of Non-Examining Physicians*

In addition to other record evidence, the ALJ relied on the opinions of two state agency physicians to arrive at Helton's RFC –the opinions of Disability Determination Service reviewing physician, B.D. Choi, M.D., and State agency psychiatrist, Thomas Tsai, M.D. Both Drs. Choi and Tsai reviewed Helton's medical records and prepared an assessment on July 27, 2015. (Tr. 60-68). The ALJ gave both opinions significant weight. (Tr. 18, 19). Because both Drs. Choi and Tsai reviewed Helton's records in July 2015, and subsequent treatment notes were added to the record later in 2015, 2016, and 2017, Helton argues each reviewing physician "did not have all the medical evidence" on which to base their opinions. As such, Helton requests remand for an updated RFC. Each opinion, and the ALJ's accompanying analysis, will be addressed below.

First, the ALJ considered Dr. Choi's opinion as follows:

9

> Dr. B.D. Choi, a reviewing physician with the Disability Determination Service (DDS), submitted an assessment of [Helton's] physical impairments on July 27, 2015. Dr. Choi determined that [Helton] retained the capacity for light work. The undersigned has given significant weight to the opinion provided by Dr. Choi. The record at hearing level is consistent with a finding of light work, as described in the established residual functional capacity.

(Tr. 19).

Helton argues that Dr. Choi "did not review any of the medical documentation from Dr. McIntosh of Michigan Rheumatology due to the fact the [sic] records had not yet been provided at the time of his opinion. [] In particular, these records include objective evidence of rheumatoid factor testing and positive rheumatoid factor [and] [Helton] was incapable of preforming [sic] physical therapy due the fact [sic] the workouts were too intense." (Doc. #11 at 14). However, Helton's argument fails, as the ALJ explained that she gave Dr. Choi's opinion significant weight because the record evidence, as a whole, including the newer evidence to which Helton refers, "is consistent with a finding of light work." (Tr. 15-19). For example, the ALJ explains that "[t]reatment records in 2015 and 2016 indicate that [Helton] reported persistent symptoms despite treatment. However, no significant deterioration of functioning is noted in the records." (Tr. 16). The ALJ then analyzed, in detail, record evidence from 2015, 2016, and 2017, documenting the progression of Helton's conditions, and her improvement with treatment. Indeed, the ALJ referenced the very records from Dr. McIntosh to which Helton refers, including the records showing that although Helton was "unable to finish physical therapy as the workouts were too intense [she] reported a good response to using a TENS unit and ultrasound therapy for her hips. [Helton also] continued to take Plaquenil, with moderate relief in joint pain and stiffness." (Tr. 16-17). The ALJ also noted, within Dr. McIntosh's records, there were times where Helton denied pain symptoms. (Tr. 17-19). In fact, on January 25, 2017, Helton was "not taking Mobic [medication] as directed by Dr. McIntosh that manages her fibromyalgia [because she had] no pain

10

at present." (Tr. 17 citing Tr. 789) ("[Helton] denies any muscle weakness, pain or joint stiffness or restricted range of motion."). Further, the ALJ discussed treatment records showing normal X-rays of Helton's hips and right knee from November 3, 2015 and May 26, 2016. (Tr. 16) (citing Tr. 816, 808-809). In her analysis, the ALJ also referenced treatment records from October 1, 2015 and September 28, 2016, which indicate that Helton was able to carry out activities of daily living without difficulty, keep her house clean, play video games, and crochet. (Tr. 18). As the Commissioner persuasively argues, "[Helton] fails to explain how these medical records [cited by the ALJ] negated Dr. Choi's limited light exertional RFC finding…Moreover, [Helton] did not challenge the ALJ's determination to give Dr. McIntosh's opinion limited weight." (Doc. #13 at 14).

The ALJ also acknowledged Dr. Choi's opinion was issued on July 25, 2017, and, as mentioned, considered record evidence submitted after that date. After reviewing all evidence, including the recent evidence to which Helton refers, the ALJ concluded that the record supports finding Helton can perform light work, as opined by Dr. Choi. There is no indication that the ALJ relied on an inaccurate or outdated portion of Dr. Choi's opinion, as Helton purports. Moreover, Helton fails to present, and the record fails to show, any subsequent treatment notes that would have changed the ALJ's reliance on Dr. Choi's opinion, because the record is consistent with a finding of light work. Her argument, therefore, lacks merit.

Next, the ALJ considered Dr. Tsai's opinion as follows:

> Dr. Thomas Tsai, a State Agency psychiatrist, performed a psychiatric review of the medical evidence of record on July 27, 2015. Dr. Tsai notes that [Helton's] mental impairments caused mild limitation with regard to activities of daily living, moderate limitations with regard to social functioning and moderate limitations with regard to the ability to concentrate, persist, or pace. Dr. Tsai noted no episodes of decompensation of extended duration. Dr. Tsai also provided an assessment of [Helton's] functioning. He opined that [Helton] was able to understand, carry out, and remember simple

> instructions; make judgments commensurate with the functions of unskilled tasks i.e., work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with most changes in routine work settings. Dr. Tsai noted no problems with attention and that [Helton] had sufficient concentration to perform simple 1-2 step tasks on a routine and regular basis. The undersigned has given significant weight to Dr. Tsai's opinion, as moderate limitations continue to be supported by the clinical findings and treatment history documented in the record at the hearing level.

(Tr. 18).

Helton argues, "the non-examining psychiatrist who provided an RFC to which the ALJ gives great weight . . . did not have the benefit of reviewing all of [Helton's] medical documentation from Lapeer County Community Mental Health." (Doc. #11 at 14-15). Again, Helton does not show this rises to the level of error, let alone reversible error. Just as the ALJ reviewed the full record, then determined the appropriate weight to give Dr. Choi's 2015 opinion, the ALJ gave significant weight to Dr. Tsai's 2015 opinion *as moderate limitations continue to be supported by the record*, which essentially moots Helton's argument that additional findings showing moderate limitations would, at all, alter the ALJ's decision. Notably, Helton does not provide any detail as to how the recent medical records might change the ALJ's RFC, beyond simply the number of pages that were added to the record since July 2015. (*See* Doc. #11 at 14-15). As the Commissioner persuasively argues, "[Helton] alleges no further limitations [that] were warranted nor illustrates a specific error with this RFC." (Doc. #13 at 15). The ALJ already incorporated moderate mental limitations, suggested by Dr. Tsai, into the RFC, as she determined Helton could not have "fast-paced production requirements[; only] minor workplace changes and simple work-related decisions; no work that requires interaction with the public; no work in tandem with co-workers; and routine supervision." (Tr. 15). Helton does not show that her recent records require any additional mental limitations beyond those which are already incorporated into the ALJ's RFC. Accordingly, there is no error with respect to the ALJ's reliance on Dr. Tsai's

opinion.

### 3. *The RFC is Supported by Substantial Evidence, and Complies with SSR 96-8p*

The ALJ found that Helton had the RFC to:

> [P]erform light work as defined in 20 CFR 416.967(b), with the following additional limitations: the opportunity to alternate from sitting to standing, and from standing to sitting, for up to 5 minutes approximately every 20 minutes, provided the person is not off task more than 10% of the work period; frequent handling, fingering, feeling, and reaching; simple, routine, repetitive, unskilled tasks with a specific vocational preparation (SVP) of 1 or 2 as defined in the Dictionary of Occupational Titles, with no fast-paced production requirements (e.g., no assembly line work), minor workplace changes, and simple work-related decisions; no work that requires interaction with the public; no work in tandem with co-workers; and routine supervision.

(Tr. 15).

Helton argues the ALJ failed to comply with SSR 96-8p in assessing Helton's mental and physical RFC. Specifically, as to the mental RFC, Helton (again) argues the ALJ erred in giving weight to Dr. Tsai[1] because he "did not address the new criteria of interacting with others, concentration, persistence or maintaining pace, and adapting and managing oneself." (Doc. #11 at 16). As to the physical RFC, Helton argues that "the non-examining physician considering her physical restrictions did not specifically address [Helton's] ability to sit, stand, walk, lift, catty [sic], push, and pull pursuant to SSR 96-8p. Furthermore, this non-examining physician did not take into consideration any non-exertional factors such as time off task or need to sit down or take a break in excess of the 15 minutes of standard breaks which is also required by SSR 96-8p." (Doc. #11 at 16). Helton's arguments, however, fail both legally and factually.

Preliminarily, as the claimant, it is Helton's burden to prove her RFC by referencing record evidence. *See* 20 C.F.R. § 404.1512(a), 416.912(a); *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x

---

[1] Helton refers to a "Dr. Sy" (Doc. #11 at 16), but, given the context, she presumably intends to refer to Dr. Tsai.

430, 436 (6th Cir. 2018) ("During the first four steps—which include a determination of the claimant's RFC—the claimant bears the burden of proof."); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("[t]he claimant ... retains the burden of proving her lack of residual functional capacity")). Helton does not meet her burden here, as she does not highlight any portion of the record the ALJ ignored.

The policy interpretation of SSR 96-8p provides that the ALJ's RFC assessment is to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996). Here, the ALJ did just that; the ALJ spent five full pages detailing relevant medical evidence, including the progression, and relative stability, of Helton's conditions. (*See* Tr. 15-19). The ALJ recognized Helton's complaints, such as her "chronic pain symptoms, especially with regard to her upper/lower extremities", and "persistent symptoms despite treatment" (Tr. 15-16), and contrasted those with Helton's treatment notes which suggested she was not experiencing pain (or as much pain), was stable, and was able to engage in activities of daily living, including crocheting items to sell to others. (Tr. 15-18). No more was required of the ALJ. *See White v. Colvin*, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p.").

Helton appears to argue that the ALJ violated SSR 96-8p because she "relies on the physical and mental RFC of [ ] non-examining physicians [Drs. Choi and Tsai]" which themselves

14

supposedly do not comply with SSR 96-8p. This argument lacks merit for multiple reasons. First, under SSR 96-8p, only the adjudicator (the ALJ), *not* the state agency physicians, need comply with SSR 86-8p. *See* SSR 96-8p (e.g., "the *adjudicator* must assess RFC"; "RFC is assessed by *adjudicators* at each level"; "in assessing RFC, the *adjudicator* must consider only limitations and restrictions attributable to medically determinable impairments") (emphasis added). Second, both Dr. Choi and Dr. Tsai did consider the relevant factors. Dr. Choi clearly considered Helton's ability to sit, stand, walk, lift, carry, push, and pull (Tr. 65-66), and Dr. Tsai considered Helton's ability to interact with others, concentration, persistence, and pace limitations, and abilities to adapt and manage herself (Tr. 67-68).

Lastly, Helton makes the following cursory, one-sentence argument: "Due to the fact that neither one of these non-examining physicians properly evaluated Plaintiff's RFC pursuant to the rules, the ALJ makes up for it by inputting her opinion of Plaintiff's RFC which is unsupported by any physician's opinion and is therefore in violation of 20 CFR §404.1520(e) and (f), 416.920(e) and (f) as well as SSR 83-10." (Doc. #11 at 17). However, this lacks merit, as an ALJ need not base the RFC on a physician's opinion. Indeed, the ALJ is not only qualified, but obligated, to review all evidence and determine the RFC herself. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("… the administrative law judge … is responsible for assessing your residual functional capacity."); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, --- Fed.Appx. ---, 2018 WL 2017564, at *5 (6th Cir. 2018); *Shepard v. Comm'r of Soc. Sec.*, 705 Fed.Appx. 435, 442–43 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner."). In *Mokbel-Aljahmi*, the Sixth Circuit rejected the plaintiff's argument that when the ALJ decided to give no weight to the treating physicians' opinions, the ALJ was required to get the opinion of another physician before determining the RFC. (*Id.*). The

Sixth Circuit ultimately determined that substantial evidence supported the ALJ's RFC, even though it was not necessarily based on a medical opinion, explaining, "[w]e have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." (*Id.*).

> 4. *The ALJ Was Not Required to Include a Function-by-Function Assessment, and Substantial Evidence Supports the ALJ's Decision*

Helton's fourth argument is that the ALJ did not comply with SSR 96-8p, by failing to include a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling). But, the Sixth Circuit has expressly rejected this very argument, stating:

> Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing… [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted)).

Here, the ALJ discussed how evidence in the record supports the RFC determination. For example, as to Helton's physical complaints, the ALJ mentioned the lack of objective findings supporting Helton's allegations of disabling pain or conditions. Referencing X-rays and treatment notes of Helton's that revealed essentially normal findings, no pain, or minimal findings, like "minimal osteoarthiritis", the ALJ wrote that "no significant deterioration of functioning is noted in the records." (Tr. 16) (citing Tr. 816 (showing normal X-ray of her right knee), 808-809 (noting normal X-rays of hips and right knee), 521 (noting normal gait, station, digits; mild glenohumoral joint tenderness in left shoulder and full range of motion at hip)).

As to Helton's mental conditions, the ALJ discussed, in detail, her ongoing treatment notes,

16

including her most recent notes from 2017. The ALJ accurately referenced notes showing that her medications have been working well, her mental conditions are relatively controlled, and she has been relatively stable. (Tr. 17-18). Specifically, the ALJ pointed to notes that Helton's "anxiety is well controlled on Zoloft" (Tr. 17) (citing Tr. 780), and that she has remained stable, without any indication of exacerbation, or recent inpatient treatment. (*See, e,g.*, Tr. 36 (Helton testifying she has not been hospitalized in the past couple years); Tr. 675 (reporting no significant changes on November 17, 2016)). The ALJ also discussed treatment notes from 2015 and 2016 in which Helton "was able to carry out daily living activities without any difficulty, but expressed concerns that she could not handle the pressure and stress of part-time employment," and that Helton was enjoying playing video games, crocheting, and participating in a choir. (Tr. 18) (citing Tr. 682).

Indeed, the record supports the ALJ's RFC. For example, in 2015, Helton reported her medication has "made a world of difference," her depression has been "good", she is "doing well on her present medication," and "doing much better in terms of being able to focus and concentrate and finish her tasks." (Tr. 773-74). In August 2015, Helton reported that she "considers working, but doesn't think she can handle the pressure and stress." (Tr. 753). However, this was prior to some of her treatment, which then led to her improvement. In October 2015, Helton reported that she had a home business selling crocheted items. (Tr. 742). And, in March 2016, Helton reported volunteering at the Refuge, helping them shred 15 years' worth of paper. (Tr. 728).

For all the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #13)** be **GRANTED**, Helton's Motion for Summary Judgment

**(Doc. #11)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: May 31, 2019                               s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                                                       United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class

18

U.S. mail addresses disclosed on the Notice of Electronic Filing on May 31, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
